UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**HUMAN REGENERATIVE
TECHNOLOGIES LLC, SKYE
ORTHOBIOLOGICS LLC,**

  *Plaintiffs*,

v.

**PRECISION ALLOGRAFT
SOLUTIONS, LLC, ALAMO
BIOLOGICS, LLC, DOROTEA
HOLDING CO., LLC, A. LEE
ANDREWS, DOES 1-10,**

  *Defendants*.

Case No.  SA-24-CV-00147-JKP

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Preliminary Injunction filed by Plaintiffs Human Regenerative Technologies, LLC, et al. (hereinafter "HRT"). *See* ECF No. 13. Defendants Alamo Biologics, LLC, et al. (hereinafter "Alamo") filed a response and HRT replied to the response. *See* ECF Nos. 21, 27. On April 4, 2024, the Court heard oral argument on the motion. The parties then agreed to mediation with a United States magistrate judge and the Court reserved ruling on the motion until after mediation. *See* ECF No. 42. United States Magistrate Judge Elizabeth S. Chestney conducted mediation and, on April 24, 2024, advised the Court the parties did not settle. *See* ECF No. 49. The motion is now ripe for ruling.

After reviewing the motion, the parties' briefings, oral argument, and the applicable law, the Court finds HRT has met its burden to show it has a substantial likelihood of success on the merits and the balancing of equities favors HRT and, therefore, **GRANTS** the motion. *See* ECF No. 13. Though the Court finds HRT has met its burden for the Court to grant preliminary

injunction, the Court recognizes the ultimate question as to whether HRT has articulated a protectable trade secret ought to be answered at another stage of the litigation. Also recognizing the harm enjoining Alamo may cause Alamo—even if outweighed by HRT's potential harm if Alamo is not enjoined—the Court **ORDERS** HRT to post a bond that would adequately compensate Alamo's costs and damages if Alamo ultimately prevails in this action. Furthermore, to swiftly answer the critical question as to whether a protectable trade secret exists, the Court **ORDERS** expedited discovery and an expedited trial schedule.

The Court, finally, **DENIES** Alamo's Motion to Dismiss and **DENIES AS MOOT** Alamo's Motion to Stay because its analysis of HRT's Motion for Preliminary injunction resolves those motions. *See* ECF Nos. 43, 51.

## BACKGROUND

This case arises from a dispute between companies that make and sell human tissue products. Plaintiff HRT makes membrane, particulate, and flowable products derived from human placental tissue for use in surgery and other procedures. Plaintiff Skye distributes HRT's products to hospitals, surgery centers, and medical facilities. Brian Banman is a former employee of HRT and current President and CEO of CTM Biomedical, LLC, a company that sells products derived from human placental tissue. Banman and CTM are not parties to this lawsuit, however, HRT sued them in the Central District of California and a jury found Banman breached his contract with HRT by improperly disclosing HRT's process for making its products to CTM's business partners. *See Skye Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al.*, Case No. 2:20-cv-03444-MEMF-PVC. The California court awarded the Plaintiffs $62,054,745.00.

In the case at bar, HRT sues the Texas-based entities with whom Banman shared HRT's confidential information. Defendants in this action, which the Court refers to as collectively

"Alamo," make the human placental tissue products Banman's company CTM sells. HRT alleges that, in so doing, Alamo is using trade secret information stolen from HRT by Banman to make products identical to HRT's products and compete with HRT in the marketplace. HRT brings causes of action against Alamo under the Defend Trade Secrets Act ("DTSA") and the Texas Uniform Trade Secrets Act ("TUTSA").

In the instant motion, HRT asks the Court to enjoin Alamo from making products, or delivering products that Alamo already made, using HRT's trade secrets. Alamo argues the Court should deny HRT's request for preliminary injunction because HRT is estopped by the California court's summary judgment ruling. Alamo further argues HRT waited too long to seek relief, is fully compensated in the California litigation, and cannot establish a likelihood of success on the merits. Alamo finally argues injunction would put CTM out of business and significantly damage Alamo's ability to operate. For the reasons discussed herein, the Court finds HRT has met its burden to establish preliminary injunction is warranted and, therefore, grants the motion.

## LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and describe in reasonable detail … the act or acts restrained or required." Fed. R. Civ. P. 65(d). A preliminary injunction is an extraordinary remedy that should not be granted unless the movant demonstrates by a clear showing: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and

(4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997).

## ANALYSIS

The Court's ruling in this case is a close call. The Court finds HRT has met its burden to establish a substantial likelihood of success on the merits. The Court further finds HRT has established a substantial threat of irreparable harm if the injunction is not granted, the balancing of harms weighs in favor of HRT, and the injunction will not undermine the public interest. For these reasons, the Court enjoins Alamo. The Court recognizes, however, the critical question as to whether a trade secret exists will be determined at a later stage of the litigation and that injunction may cause Alamo to suffer significant harm to its business. The Court, therefore, orders HRT to post a bond to compensate Alamo should Alamo ultimately be determined to be wrongfully enjoined. The Court further imposes an expedited discovery and trial schedule to more quickly reach the ultimate question of whether a protectable trade secret exists.

Alamo offers several reasons why HRT's Motion for Preliminary Injunction should be denied. The Court first addresses Alamo's collateral estoppel argument, then turns to Alamo's substantive arguments. The Court also addresses Alamo's Motion to Dismiss and Motion to Stay because they deal with issues addressed in the Court's ruling on the instant motion.

### I.  Collateral Estoppel

Alamo argues HRT is estopped from bringing this action because the California court dismissed HRT's trade secret claim on summary judgment. The Fifth Circuit has held collateral estoppel applies where "(1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that

would make it unfair to apply the doctrine." *Amaya v. City of San Antonio*, 980 F. Supp. 2d 771, 777 (quoting *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391 (5th Cir. 1998), overruled on other grounds by *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020)). All the parties to the second lawsuit do not have to be the same as those in the first for collateral estoppel to apply. *Blonder-Tongue Labs., Inc. v. Univ. Illinois Found.*, 402 U.S. 313, 323–24, 349–50 (1971); *Next Level Communications LP v. DSC Communications Corp.*, 179 F.3d 244, 256 (5th Cir. 1999).

Here, HRT argues it is not estopped from bringing this action because the issue is different from the issue before the California court on summary judgment. To avoid injustice, the Supreme Court has limited the use of collateral estoppel to "situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Comm'r v. Sunnen*, 333 U.S. 591, 599–600 (1948) (emphasis added); *see also Heston as Next Friend of A.H. v. Austin Indep. Sch. Dist.*, 71 F.4th 355, 357 (5th Cir. 2023). As such, this Court has recognized that collateral estoppel "does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings." *Lartigue v. Northside Indep. Sch. Dist.*, No. SA-19-CV-00393-JKP, 2022 WL 2392647, at *4 (W.D. Tex. July 1, 2022) (cleaned up). Collateral estoppel is thus inappropriate where either the facts or legal standards are different. *See, e.g., id.* at *5.

The California court did not address the issue before this Court. The California court dismissed HRT's trade secret claim on summary judgment, finding HRT had not "sufficiently identified" trade secrets within its processing methods in its interrogatory responses. *See* ECF No. 43 at 28. The California court did not, however, rule on whether HRT's processing methods

contain trade secrets. To the contrary, the California court recognized HRT's process "potentially qualifies for trade secret protection," but it never reached that question because it first determined HRT had not "specifically identified" their trade secrets in discovery. *Id*. The California court, therefore, did not reach the question before this Court. Furthermore, HRT brings claims under the DTSA and TUTSA in this case, whereas the California court addressed a DTSA claim only. The statues contain the same elements of a trade secret; however, federal courts sitting in diversity jurisdiction apply Texas caselaw in interpreting the TUTSA. Finally, the facts under consideration in this case are different from the facts in the California case. In this action, HRT addresses the concern raised by the California court by specifically identifying aspects of its processing methods that it considers to be trade secrets, namely, (1) the tissue-to-liquid ratio for HRT's flowable products (which HRT refers to as its "golden ratio"); and (2) the process for developing a thicker, more durable membrane for HRT's membrane product. Because the Court identifies different facts and legal issues in the two proceedings, the Court finds collateral estoppel does not preclude HRT from bringing this case.

## II.  HRT's Motion for Preliminary Injunction

To prevail on its Motion for Preliminary Injunction, HRT has the burden of showing (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine the public interest. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d at 1051. The Court addresses each of these elements, in turn, below.

### A.     Likelihood of Success on the Merits

To determine the likelihood of success on the merits, the Court looks to the standards provided by substantive law. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 622 (5th Cir. 1985). HRT alleges causes of action under the DTSA and the TUTSA. Under the DTSA and the TUTSA, a court may enjoin the "actual or threatened misappropriation" of trade secrets. *See* 18 U.S.C. § 1836(b)(3)(A)(i); Tex. Civ. Prac. & Rem. Code § 134A.003. To meet its burden at this stage of the litigation, HRT must present a prima facie case. *Daniels Health Scis., LLC v. Vascular Health Scis.*, 710 F.3d 579, 582 (5th Cir. 2013) (citing *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011)). A prima face case does not mean HRT must prove that it is entitled to summary judgment. *See Byrum v. Landreth*, 566 F.3d 442, 446 (5th Cir. 2009).

To prevail on a trade secret misappropriation claim under Texas law, "a plaintiff must show: '(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff.'" *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009) (quoting *Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 376 (5th Cir. 1999)). In this case, the California jury determined Banman breached his confidentiality agreements by sharing HRT's processing methods with the Defendants in this case, which the Defendants then used to make placental tissue products, without authorization from HRT, in satisfaction of elements (2) and (3) of a trade secret misappropriation claim. The question before the Court—and indeed the question most contested by the parties—is whether HRT's confidential processing methods constitute a trade secret in satisfaction of element (1).

7

TUTSA defines a trade secret as:

> …all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac & Rem. Code Ann. § 134A.002(6).

At this stage, the Court is not required to, and does not, determine if information at issue is, in fact, a trade secret; the Court considers only "whether the applicant has established that the information is entitled to trade-secret protection until the trial on the merits." *Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d 337, 343 (Tex. App.—Austin 2001, no pet.). Courts have defined a trade secret as "any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it." *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003) (quoting *Computer Assocs. Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). To aid in their inquiry as to whether a trade secret exists under Texas law, courts examine (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or

difficulty with which the information could be properly acquired or duplicated by others. *In re Bass*, 113 S.W.3d at 739. "Items such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have been shown to be trade secrets." *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd) (citations omitted).

Here, HRT characterizes two aspects of its processing methods as trade secrets: (1) the tissue-to-liquid ratio for HRT's flowable products (the so-called "golden ratio"); and (2) the process for developing a thicker, more durable membrane for HRT's membrane product. HRT characterizes its processing methods as unique and highly valuable, describing lengthy research and development leading up to the discovery of its current processes. HRT further describes significant measures it undertook to protect its processing methods by requiring employees with knowledge of the process to sign confidentiality agreements and greatly limiting the number of people with access to its golden ratio. Indeed, HRT alleges it restricts access to its written processes by keeping them securely locked in filing cabinets and keeping the golden ratio locked in a safe in HRT CEO Chris Sharp's personal office and home.

Alamo challenges whether HRT's golden ratio and processing methods are, in fact, trade secrets. Specifically, Alamo argues the golden ratio used in HRT's flowable product is publicly disclosed in at least one patent. Alamo further notes HRT's expert witness in the California case testified competitors can discover HRT's golden ratio through reverse engineering. Alamo further argues HRT's method for achieving thickness in its membrane product is currently employed by at least one other company and HRT's expert agreed HRT's process could be identified by holding HRT's product up to a light or examining it under a microscope. HRT vehemently disagrees with Alamo's characterization of the facts. HRT notes the patent to which

9

Alamo refers contains 266 paragraphs listing multiple different ratio combinations without further information. HRT further asserts its expert reviewed over 40 patents and was unable to identify HRT's unique processing methods in them. HRT finally asserts no other company has been able to reverse engineer or duplicate HRT's products.

Even though HRT does not have to put on evidence at this stage of the litigation, HRT provides the Court with some evidence from the California litigation to support its contentions. Specifically, HRT points to a document Banman shared with Alamo to assist in Alamo's processing of placental tissue products as evidence that Banman shared HRT's processes with Alamo. The document includes the "golden ratio" which HRT identifies as its trade secret used to make its flowable product. In the California case, HRT officials testified the document Banman shared with Alamo contained HRT's trade secret processing methods used to make its membrane product. HRT provides evidence that when Banman was working with Alamo to develop its placental tissue products, Alamo sent Banman a sample of a "thick" membrane that was too thin. Banman then sent a photograph of an HRT sample membrane product to Alamo as an example of the thickness he was seeking in the product and instructed Alamo to employ the same process HRT employs. HRT argues this evidence demonstrates Alamo improperly acquired from Banman and then used HRT's processing methods. According to HRT, if HRT's processing methods were so commonly known and publicly available as Alamo suggests, Alamo would not have needed Banman to share them.

Though the facts are contested, HRT need only make a prima facie case to support its request for preliminary injunction. HRT does not have to prove it is entitled to summary judgment at this stage of the litigation. *See Byrum v. Landreth*, 566 F.3d at 446. Based on the record before it, the Court finds HRT has met its burden to make a prima face case establishing

its processing methods are entitled to trade-secret protection until the trial on the merits. *Ctr. for Econ. Justice v. Am. Ins. Ass'n*, 39 S.W.3d at 343. The Court has great concerns about whether HRT can ultimately establish whether it has a trade secret warranting protection under the DTSA and TUTSA, but that is a question to be answered at another stage of litigation. To more quickly reach that question, the Court orders an expedited briefing schedule and expedited trial schedule.

### B. Irreparable Harm

To satisfy the next element, HRT must demonstrate it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). An injunction is appropriate only if the anticipated injury is imminent and not speculative. *Winter*, 555 U.S. at 22. "In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." *A & A Global Indus., Inc. v. Wolfe*, CIV.A. 3:01CV1515–D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001) (quoting *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996)); *see also Traders Int'l, Ltd. v. Scheuermann*, Civ.A. No. H–06–1632, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006). Here, HRT says its injury is not speculative. Indeed, HRT alleges that because of Banman's breach of his non-compete agreement with HRT, Alamo is already making products which mimic HRT's products, causing HRT to suffer lost sales and harm to their brands, business reputation, and company value. *See* Sharp Declaration, ¶¶ 112–22.

Alamo suggests HRT cannot establish irreparable harm in the absence of injunctive relief because it waited so long to bring the instant action. But HRT has a good explanation for why it seeks relief now. During the California litigation, the parties acknowledged HRT would first obtain a jury determination before seeking relief from Alamo. This was a reasonable approach because to establish trade secret misappropriation under the DTSA and TUTSA, a plaintiff must

11

first show that the defendant acquired the trade secret through improper means. Indeed, Alamo CEO Lee Andrews testified in the California case that if the jury determined Banman had stolen the ideas for the products Alamo is now making, Alamo would stop making products for CTM. *See* Plaintiffs' Exh. J at 157. HRT moved swiftly after receiving the jury verdict by issuing a cease-and-desist letter to Alamo. Alamo responded by refusing to stop making the products in question. HRT then scheduled a meet-and-confer call and, when that effort was unsuccessful, sought court intervention through the instant action. The Court finds HRT moved quickly to protect its interests and, therefore, its request for preliminary injunction is not untimely.

Alamo further argues HRT's request for preliminary injunction is inappropriate because the damages award in the California litigation adequately compensates HRT for Alamo's ongoing misappropriation of HRT's confidential information. Specifically, Alamo argues HRT cannot seek both monetary damages for future harm in the California litigation and injunctive relief here. HRT correctly notes, however, that the cases cited by Alamo are inapposite because they involve parties seeking damages and injunctive relief from the same party for the same injury. *See e.g. Innogenetics, N.V. v. Abbott Labs*, 512 F.3d 1363, 1380 (Fed. Cir. 2008); *Schneider Nat. Carriers v. Bates*, 147 S.W.3d 264, 284 (Tex. 2004); *Boudreaux v. Culver*, No. 01-03-01247-CV, 2005 WL 1111237 at *5 (Tex. App.—Houston [1st Dist.] May 5, 2005). In this case, HRT is seeking injunctive relief to stop Alamo from using HRT's trade secret information to make products similar to HRT's products and compete with HRT in the marketplace. That harm was not remedied by the damages awarded by the California court against Banman. Indeed, as HRT notes, the DTSA and TUTSA expressly permit parties to recover damages and injunctive relief. *See* 18 U.S.C. § 1836(b)(3)(A), (B); Tex. Civ. Prac. & Rem. Code § 134A.004.

The Court, therefore, rejects Alamo's argument that injunctive relief is inappropriate in this case and finds HRT had met its burden to show it will suffer irreparable harm in the absence of injunctive relief.

### C. Balance of Harms

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24. In balancing harms, courts consider several factors, such as the threat of disclosure of the trade secrets by defendants, whether the injunction will effectively destroy a party's business, and whether denial will cause a loss of current market share or just reduce prospects for expansion. *E.g. Kia Am., Inc. v. McAdams*, 2023 WL 8505449 at *2 (W.D. Tex. Oct. 20, 2023). Here, Alamo suggests the Court entering injunction would shut down CTM's entire business and remove all its products from the market. CTM, however, is not a party to this lawsuit. As to the Defendants in this case, Alamo argues HRT's proposed injunction is overbroad and anti-competitive and would significantly harm its business. In the motion hearing, Alamo told the Court the proposed injunction would effectively shut down 50 to 60 percent of its business, causing it to lay off about 50 employees. *See* Hearing Transcript at 53. As the Court noted in the hearing, however, Alamo does not have clean hands. If Alamo is ultimately found to have misappropriated HRT's trade secrets, Alamo should suffer the consequences of building its business with stolen trade secrets. Furthermore, a cost-benefit analysis reveals the potential harm to HRT's business associated with not enjoining Alamo outweighs any harm Alamo may suffer as a result of being enjoined. As discussed above, HRT is already suffering harm and will continue to suffer harm every day Alamo is allowed to continue making products which mimic HRT's products. Specifically, allowing Alamo to continue selling

products that compete with HRT in the marketplace would cause HRT to suffer lost sales and harm to its brands, business reputation, and company value. This harm outweighs any harm Alamo may suffer for being enjoined from making and selling products it developed with HRT's stolen trade secrets. The Court, therefore, finds the balance of harms weighs in favor of HRT.

### D. Public Interest

Next the Court considers what impact enjoining Alamo would have on the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. This factor overlaps substantially with the balance-of-hardships requirement. *Id*. "The purpose of an injunction is to remove the advantage created by the misappropriation." *Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 263 (Tex. App.—Dallas 2014, no pet.) (citing *Bryan v. Kershaw*, 366 F.2d 497, 502 (5th Cir. 1966)). Indeed, "the undoubted tendency of the law has been to recognize and enforce higher standards of commercial morality in the business world." *Id*. (quoting *Hyde Corp. v. Huffines*, 158 Tex. 566, 581–82, 314 S.W.2d 763, 773 (1958)).

Here, Alamo suggests granting injunction would disserve the public interest because patients and doctors would not have access to Alamo's placental tissue products. According to HRT, however, the products Alamo sells will still be available through HRT because the companies are selling the exact same products. Further, granting injunction benefits the public interest in commercial integrity and protection of legal and property rights. *See Glycobiosciences, Inc. v. Woodfield Pharm., LLC*, No. 4:15-CV-02109, 2016 WL 1702674 at *9 (S.D. Tex. Apr. 27, 2016). Finally, courts have held the public interest is best served by enforcing a remedy provided for by Texas law. *See e.g. AmeriSpec, Inc. v. Metro Inspection*

14

*Servs., Inc.*, CIV.A. 3:01–CV–0946–D, 2001 WL 770999, at *6 (N.D. Tex. July 3, 2001). The Court, therefore, finds enjoining Alamo would not disserve the public interest.

The Court finds all factors weigh in favor of granting preliminary injunction. The Court, therefore, finds HRT has met its burden to show preliminary injunction is warranted and Alamo should be enjoined.

### III.     Bond

Consistent with Fed. R. Civ. P. 65(c), the Court requires HRT to post a bond to compensate Alamo in the event that Alamo is ultimately found to be wrongfully enjoined. The Court, therefore, directs the parties to address, consistent with the briefing schedule set forth below, what they believe to be a sufficient bond amount.

### IV.     Alamo's Motion to Dismiss and Motion to Stay

As an initial matter, Alamo's Motion to Dismiss is subject to denial because it is untimely. The Court, however, denies the motion on the merits. For the reasons discussed above, the Court finds HRT is not estopped from bringing the instant action. Furthermore, HRT's alter ego allegations against individually-named Defendant Andrews are sufficient to overcome a Rule 12(b)(6) challenge. As HRT notes, the alter ego analysis is "heavily fact-specific" and is generally not appropriate for disposition on a motion to dismiss. *See, e.g., U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 547 (N.D. Tex. 2010); *Dong Phuong Bakery, Inc. v. Gemini Soc'y, LLC*, No. CV 21-1109, 2022 WL 898750, at *5 (E.D. La. Mar. 28, 2022). The Court, therefore, denies Alamo's Motion to Dismiss. *See* ECF No. 43. The Court, additionally, denies Alamo's Motion to Stay as moot. *See* ECF No. 51.

## CONCLUSION

For the reasons discussed above, the Court finds HRT has met its burden to show it has a substantial likelihood of success on the merits and the equities weigh in its favor and, therefore, **GRANTS** HRT's Motion for Preliminary Injunction. *See* ECF No. 13.

**IT IS THEREFORE ORDERED** that Defendants are **ENJOINED** from making products, or delivering products Defendants already made, using Plaintiffs' trade secrets. Such products include (among others) those that Defendants make for Plaintiffs' former employee's company, CTM Biomedical, LLC, that are labeled and sold as "Boost," "Paste," "Flow," "Thin," "Thick," and "X-Thick." For the avoidance of doubt, the preliminary injunction is extended beyond CTM, to Defendants' making and delivery of misappropriated products generally.

**IT IS FURTHER ORDERED** that, consistent with Fed. R. Civ. P. 65(c), the Court **ORDERS** HRT to post a bond that would adequately compensate Alamo's costs and damages if Alamo ultimately prevails in this action. Alamo shall file a motion, **on or before noon on May 29, 2024**, addressing the specific bond amount they request in this case. HRT shall file its response **on or before noon on June 5, 2024**.

**IT IS FURHTER ORDERED** that, to swiftly answer the critical question as to whether a protectable trade secret exists, the Court **ORDERS** expedited discovery and an expedited trial schedule in this case. United States Magistrate Judge Richard B. Farrer, to whom this case is referred for pretrial matters, will set forth the terms of expedited discovery and the trial schedule.

**IT IS FINALLY ORDERED** that the Court **DENIES** Alamo's Motion to Dismiss and **DENIES AS MOOT** Alamo's Motion to Stay because the Court's analysis of HRT's Motion for Preliminary injunction resolves those motions. *See* ECF Nos. 43, 51.

It is so ORDERED.
SIGNED this 15th day of May, 2024.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE